**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-03179-NYW

R.L.M.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action arises under Titles II and XVI of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which denied applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") filed by Plaintiff R.L.M. ("R.L.M." or "Plaintiff"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **AFFIRMED**.

## BACKGROUND

Plaintiff filed applications for DIB and SSI on June 6, 2019. [Doc. 9-2 at 15].[2] In his application, Plaintiff alleged that he was suffering from, and prevented from working due to, the following conditions: chronic kidney stones, chronic pain, fibromyalgia, two bulged discs in the

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this Court refers to Plaintiff using his initials only.

[2] When citing to the Administrative Record, [Doc. 9], the Court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, which is found in the bottom right-hand corner of the page. For all other documents, the Court cites to the document and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

neck, chronic migraines, depression, anxiety, chest deformity, insomnia, and scoliosis. [Doc. 9-6 at 355].

The Social Security Administration ("SSA") denied Plaintiff's requests for benefits on January 23, 2020, [Doc. 9-4 at 169, 175], and maintained that denial upon reconsideration on December 11, 2020, [*id.* at 187, 200]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), [*id.* at 212–13], which was held on February 14, 2022, [Doc. 9-2 at 35]. ALJ Lynn Ginsberg issued an unfavorable decision on Plaintiff's applications on March 15, 2022. [*Id.* at 12].

In her decision, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2020, and that he had not engaged in substantial gainful activity since his amended alleged disability onset date of January 1, 2018. [*Id.* at 17]. The ALJ also determined that Plaintiff had the following severe impairments: chronic kidney stones, mild hyperoxaluria, degenerative disc disease of the cervical spine, cervical dystonia, asthma, obstructive sleep apnea, migraines, pectus carinatum, and adjustment disorder with depression and anxiety; and that these determinable impairments significantly limited his ability to perform basic work activities. [*Id.*].

The ALJ next concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the Social Security Regulations ("the Regulations"). [*Id.* at 18]. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [The Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for about 6 hours and sit for about 6 hours in an 8-hour work day with normal breaks. He can push or pull with the bilateral upper extremities occasionally. He can never climb ladders, ropes, or scaffolds. He can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He can overhead reach bilaterally occasionally. He can bilaterally handle and

2

>finger frequently. He can tolerate only occasional exposure to environmental irritants such as fumes odors, dusts, and gases. He can have no use of moving hazardous machinery. He can have no exposure to unprotected heights. He can understand, remember, and carry out instructions that can be learned in 6 months to learn techniques, acquire information, and develop facility needed for an average job performance.

[*Id.* at 21].

The Appeals Council denied Plaintiff's request for review, *see* [*id.* at 1–4], which rendered the ALJ's decision the final decision of the Commissioner, [*id.* at 1]. Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on December 8, 2022. [Doc. 1]. This matter is now ripe for consideration, and the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if he is insured, has not reached retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that he was disabled prior to his date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). In addition, SSI is available to an individual who is financially eligible,[3] files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. The earliest a claimant can receive SSI is the month following the month within which the claimant filed his application, and thus the claimant must establish that he was disabled on or prior to his application date. *See* 20 C.F.R. §§ 416.200, 416.335.

---

[3] SSI is a needs-based program established for individuals with limited resources. *See* 20 C.F.R. § 416.110; *see also Ford v. Comm'r*, 816 F. App'x 276, 279 (10th Cir. 2020) (discussing the distinction between DIB and SSI).

3

An individual is disabled only if the individual's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See* 20 C.F.R. §§ 404.1509, 416.905(a).[4] When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five steps contemplate the following determinations:

1. Whether the claimant has engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment or combination of impairments;
3. Whether the claimant has an impairment that meets or medically equals any listing found in appendices to the Regulations;
4. Whether the claimant has the RFC to perform his past relevant work; and
5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See id.* §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step

---

[4] Section 404 of Title 20 of the Code of Federal Regulations relates to Title II of the Act and governs proceedings related to applications for DIB; Section 416 relates to Title XVI of the Act and governs proceedings related to applications for SSI. *See* 20 C.F.R. §§ 404.1, 416.101.

4

five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's final decision, the Court limits its inquiry to whether substantial evidence supports the decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's," *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016), but the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Flaherty*, 515 F.3d at 1070 (quotation omitted).

Remand is also warranted where the ALJ fails to apply the correct legal standard or fails to provide the reviewing court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). But if the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

## ANALYSIS

Plaintiff argues (1) that the ALJ failed to base her findings regarding the "consistency" of Plaintiff's reported symptoms on substantial evidence; (2) that the ALJ erred in evaluating Plaintiff's migraine headaches; (3) that the ALJ improperly evaluated the available medical opinion evidence; and (4) that the Appeals Council wrongly concluded that new evidence Plaintiff provided would not have changed the ALJ's decision. *See* [Doc. 11 at 6–7]. The Court addresses the Parties' arguments on all four of these issues below.

### I.     Reported Symptom Consistency

Plaintiff alleges the ALJ erred in evaluating the consistency of Plaintiff's statements regarding his disabling kidney stones, migraine headaches, and daily activities, with the medical evidence. [*Id.* at 43–48]. The Court respectfully disagrees.

The RFC must address the claimant's purported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. "Symptoms" are a claimant's own description of their physical or mental impairments. *Id.* §§ 404.1502(i), 416.902(n). A claimant's description of their symptoms will not alone establish disability. *See id.* §§ 404.1529(a)–(b), 416.929(a)–(b). The Regulations state that, "[i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* §§ 404.1529(a), 416.929(a). Specifically, the SSA directs ALJs to "consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with" the record. SSR 16-3p, 2017 WL 5180304, at *5 (S.S.A. Oct. 25, 2017).

First, while Plaintiff made statements regarding the limiting effects of his kidney stones, the ALJ found those statements inconsistent with the record. *See* [Doc. 9-2 at 22]. The ALJ found

6

that Plaintiff had recurrent kidney stones that only required treatment twice per year and that there were significant gaps between his medical interventions for kidney stones. *See* [*id.* at 22–23]. Plaintiff claims this finding is in error. However, Plaintiff relies on a misstatement of the ALJ's decision by suggesting that the ALJ found Plaintiff only needed medical visits twice per year. *See* [Doc. 11 at 43–44]. As Defendant observes, medical visits and medical interventions, such as for stent placements, are different. *See* [Doc. 15 at 10]. While Plaintiff relies on a table of medical visits, [Doc. 11-1], to show that the ALJ erred in finding that Plaintiff only had two medical visits a year, this is not what the ALJ was referring to. Additionally, Plaintiff relies on the opinion of Dr. Phillip Kick ("Dr. Kick") which stated that Plaintiff would need at least two absences from work a month. *See* [Doc. 11 at 44]. However, the ALJ sufficiently explained why Dr. Kick's opinion was unpersuasive. *See* [Doc. 9-2 at 25 (noting that the record shows such a limitation is only appropriate twice a year when Plaintiff is actively struggling with kidney stones)]. Hence, Plaintiff asks this Court to impermissibly reweigh the evidence on this point. This Court declines the invitation to do so. In contrast, the ALJ's findings about the limiting effects of Plaintiff's kidney stones are supported by substantial evidence, as the ALJ relied on Dr. William Biles ("Dr. Biles"), Dr. Aaron Snyder ("Dr. Snyder"), Dr. Virginia Thommen ("Dr. Thommen"), and Dr. John Mars ("Dr. Mars"), to conclude that Plaintiff did not need two work absences a month. *See* [*id.* at 23–25].

Second, the ALJ found that Plaintiff's testimony regarding the frequency of his migraine headache symptoms was inconsistent with the medial evidence in the record. *See* [*id.* at 23]. Plaintiff claims this finding is in error. [Doc. 11 at 45]. Plaintiff argues that the "finding results from a misreading of the record and citing evidence out of context." [*Id.*]. The ALJ found that Plaintiff's migraine headaches were treated effectively with medication, [Doc. 9-2 at 23], while

7

Plaintiff testified that the medication was only partially effective, [*id.* at 70–71]. In making this determination, the ALJ recited findings from treatment notes which stated that the medication was immediately effective and that the headaches improved over the years. *See* [*id.* at 23]. The ALJ further relied on a neurological examination. *See* [*id.*]. Thus, the ALJ properly found Plaintiff's statements inconsistent with the objective medical evidence and other medical evidence in the record. The ALJ's finding is supported by substantial evidence and this Court will not reweigh the evidence.

Third, Plaintiff contends the ALJ erred in rejecting Plaintiff's testimony and written statements regarding his daily living activities. *See* [Doc. 11 at 46–47]. Plaintiff reported daily activities which the ALJ described as "extremely limited." [Doc 9-2 at 26]. However, the ALJ found Plaintiff's statements to be unsupported and inconsistent with the record. *See* [*id.* at 26–27]. In making this determination, the ALJ relied on the fact that Plaintiff had described greater functional abilities to consultative examiner Dr. Mars. *See* [*id.*]. Even so, Plaintiff does not challenge the ALJ's evaluation of supportability or consistency. *See* [Doc. 11 at 46–47]. Instead, Plaintiff claims that the ALJ erred by stating that Plaintiff's statements "cannot be objectively verified with any reasonable degree of certainty." [*Id.* at 46 (quoting [Doc. 9-2 at 26])]. While Plaintiff is correct that the Regulations do not require objective verification, the supportability and inconsistency of the statements are valid reasons to discount the testimony. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ considers whether there are conflicts between a claimant's statements and the rest of the evidence). Thus, any error that can be attributed to the ALJ's "objective verification" statement is harmless, and the inconsistency finding is supported by substantial evidence.[5]

---

[5] Plaintiff makes a fourth argument regarding his work history. *See* [Doc. 11 at 47]. However, it is framed as another argument about a symptom. This argument is misplaced, as it is not based on the Regulations for symptom evaluation.

## II. Evaluation of Migraine Headaches

Plaintiff contends that the ALJ erred in failing to properly evaluate equivalency pursuant to Social Security Ruling 19-4p with respect to his migraine headaches. *See* [Doc. 11 at 49]. The Commissioner responds that Plaintiff has waived this argument because Plaintiff's former counsel failed to raise the equivalency issue at the hearing or in his prehearing brief. *See* [Doc. 15 at 20].

At step three of the five-step evaluation process for determining whether a claimant is disabled under the Act, the question is whether the claimant has an impairment that meets or medically equals any specified listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The listings describe impairments that the SSA considers per se disabling. *See, e.g., id.* § 404.1525(a). While there is no listing for primary headache disorders, the SSA may "find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." SSR 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). A primary headache disorder is most analogous to epilepsy under listing 11.02. *Id.* However, a primary headache disorder's equivalence to listing 11.02 is "uncommon." *Id.* Even so, if the headache disorder is not medically equivalent to listing 11.02, the ALJ must include the limiting effects of such a disorder in the RFC. *Id.*

An impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. SSR 17-2p, 2017 WL 3928306, at *2 (S.S.A. Mar. 27, 2017). At this step, Plaintiff bears the burden to present evidence that supports equivalency. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). If an ALJ believes that the evidence does not support a finding of equivalency, it is generally sufficient for the ALJ to state as much. SSR 17-2p, 2017 WL 3928306, at *4. The ALJ "is not required to articulate

9

specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.*

Plaintiff relies on the Supreme Court's decision in *Sims v. Apfel* to argue that a claimant may raise issues for judicial review even if they have not been raised before the ALJ. [Doc. 16 at 9]. However, such reliance on *Sims* for this proposition is misplaced. In *Sims*, the Supreme Court considered "whether a Social Security claimant waives judicial review of an issue if he fails to exhaust that issue by presenting it to the Appeals Council in his request for review." 530 U.S. 103, 106 (2000). In doing so, the *Sims* Court specifically noted that whether a claimant had to exhaust issues before an ALJ was not before it. *Id.* at 107. Here, the question is not whether Plaintiff exhausted issues before the Appeals Council, but whether Plaintiff adequately exhausted issues before the ALJ. Therefore, this Court concludes that *Sims* is not dispositive.

The Tenth Circuit has not passed on the specific issue of whether doctrines of forfeiture and waiver apply to issues not presented before SSA ALJs. But it has stated, in the context of a social security appeal, that when a claimant is represented by counsel, the ALJ is entitled to rely on counsel to ensure claims are adequately explored and may require counsel to identify issues requiring further development. *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Moreover, other circuits have imposed an issue exhaustion requirement in the SSA ALJ context. For instance, the Ninth Circuit has held that, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)). Similarly, the First Circuit has declined to extend the *Sims* rule to the ALJ context. *Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001). There, the court reasoned that

10

the impact of a no-waiver approach at the ALJ level would "cause havoc" and "severely undermin[e] the administrative process." *Id.*

The Tenth Circuit has only considered issue exhaustion before an ALJ in the context of Appointments Clause challenges, where litigants dispute whether the administrative law judges who reviewed their claims were properly appointed under the United States Constitution. *See Carr v. Comm'r*, 961 F.3d 1267, 1273 (10th Cir. 2020), *rev'd*, 141 S. Ct. 1352 (2021). The Supreme Court has held that such constitutional challenges need not be exhausted through presentation to the ALJ and may be made for the first time in federal court. *See Carr*, 141 S. Ct. at 1362. Here, Plaintiff makes no such Appointments Clause challenge. After *Carr*, the Seventh Circuit, assessing whether a litigant challenging a denial of SSI benefits had waived objections to a vocational expert's methodology, held that *Carr* did not stand for the proposition that the doctrines of forfeiture and waiver do not generally apply in disability proceedings. *See Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023). Thus, this Court is persuaded that the weight of authority indicates that the doctrine of waiver may apply in the context of proceedings before SSA ALJs.

With these considerations in mind, the Court proceeds to whether Plaintiff has waived his equivalency argument. As noted above, it is Plaintiff's burden to show medical equivalency at step three of the evaluation process. *Fischer-Ross*, 431 F.3d at 733. Plaintiff was represented by counsel at the hearing. *See* [Doc. 9-2 at 35, 39]. Plaintiff's counsel prepared a prehearing brief which the ALJ considered. [*Id.* at 26–27, 43–44; Doc. 9-6 at 503–10]. Within this brief, Plaintiff did not allege that his migraines were medically equivalent to listing 11.02. *See* [Doc. 9-6 at 505–10; Doc. 16 at 9 (conceding that the prehearing brief did not address SSR 19-4p)]. In fact, Plaintiff admittedly elected to defer argument on any step three issues. [Doc. 9-6 at 506]. At the hearing, Dr. Biles opined that Plaintiff's impairments did not meet or medically equal a listing that would

11

result in a finding of disability. [Doc. 9-2 at 49]. Plaintiff's counsel did not question Dr. Biles regarding this conclusion. [*Id.* at 53–60]. Nor did Plaintiff's counsel make any argument at the hearing regarding equivalency. [*Id.* at 37–81]. An ALJ is entitled to rely on a claimant's counsel to ensure all claims are adequately explored and developed, *Branum*, 385 F.3d at 1271, but Plaintiff failed to raise the equivalency issue before the ALJ. Accordingly, Plaintiff has waived his claim of error regarding equivalency under listing 11.02.

Even if Plaintiff has not waived the issue, the ALJ sufficiently evaluated medical equivalency. The ALJ stated that she had considered "all of the claimant's impairments, singly and in combination, and [found] that they do not meet or medically equal any of the listings found in 20 CFR Part 404, Subpart P, Appendix 1." [Doc. 9-2 at 18]. Generally, the ALJ is under no obligation to elaborate further on this point. SSR 17-2p, 2017 WL 3928306, at *4. Here, however, the ALJ continued. The ALJ supported this finding by indicating that none of the individuals whose opinions she found persuasive concluded that a medical listing was met or equaled. [Doc. 9-2 at 18]. Furthermore, the ALJ's own independent review indicated that no medical listing was met or equaled. [*Id.*].

Plaintiff is correct that Mr. Bradley Martin ("Mr. Martin"), a physician's assistant specializing in neurology, *see* [Doc. 9-14 at 2583], is an acceptable medical source under 20 C.F.R. § 404.1502(a)(8). *See* [Doc. 16 at 10]. Mr. Martin has documented and detailed his observations of Plaintiff's headache disorder as required by SSR 19-4p. [Doc 9-14 at 2577–81]. Even so, under SSR 19-4p, the SSA also considers the claimant's response to treatment. SSR 19-4p, 2019 WL 4169635, at *6. Here, Plaintiff testified at the hearing that he suffered from headaches between 15 and 20 days a month while on medication. [Doc. 9-2 at 70–71]. However, as detailed above, the ALJ found that this statement was inconsistent with the objective medical evidence. [*Id.* at

12

21–23]. Namely, the objective medical evidence supported the ALJ's conclusion that Plaintiff's symptoms did improve with medication. [*Id.* at 23]. Therefore, even if Plaintiff had not waived the issue, the Court would conclude that the ALJ sufficiently evaluated Plaintiff's migraine headaches for medical equivalency at step three.

Plaintiff also argues that the ALJ failed to include limitations for the headache disorder in her RFC findings as required by SSR 19-4p. Specifically, Plaintiff contends that, while the ALJ said she included limitations in the RFC finding to avoid "headache triggers," [Doc. 9-2 at 25], the ALJ did not identify those triggers and did not actually include such a limitation, [Doc. 11 at 51–52]. Plaintiff argues that the limitations required by the headache disorder include the need to miss work twice per month. [*Id.*]. However, Plaintiff's disagreement with the limitations that the ALJ found does not mean that the ALJ failed to include limitations as required. For example, the ALJ's RFC stated that "[Plaintiff] can tolerate only occasional exposure to environmental irritants such as fumes odors, dusts, and gases." [Doc. 9-2 at 21]. While the RFC did not explicitly link this limitation to Plaintiff's headache disorders, the ALJ went on to explain that she "incorporated limits on environmental irritants to avoid headache triggers." [*Id.* at 24–25]. Accordingly, the RFC accounted for Plaintiff's headache symptoms.

### III.   Evaluating Medical Opinions

The Regulations identify five categories of evidence to be considered by the SSA in adjudicating a claim for benefits: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a), 416.913(a). "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in work-related

13

abilities. *Id.* §§ 404.1513(a)(2), 416.913(a)(2).  The ALJ has a duty to "give consideration to all the medical opinions in the record," *Keyes-Zachary*, 695 F.3d at 1161, and the ALJ must articulate how persuasive she finds each medical source opinion, 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

Plaintiff claims four errors based in the ALJ's evaluation of medical opinions from Dr. Biles, Dr. Mars, Dr. Snyder, Dr. Thommen, Dr. Kick, and Mr. Jason Valderrama ("Mr. Valderrama").  Relevant here, Plaintiff relies on the treating source rule.  *See* [Doc. 11 at 53].  The Regulations previously required the ALJ to give greater weight to the claimant's treating sources. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, "[i]n 2017, the [SSA] rules were changed to no longer 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'" *Palan v. Saul*, No. 18-cv-02130-PAB, 2020 WL 2832375, at *3 n.3 (D. Colo. June 1, 2020) (quoting 20 C.F.R. § 404.1520c(a)).  Claims filed after March 27, 2017, like Plaintiff's, are governed by the new Regulations.  *See* 20 C.F.R. §§ 404.1520c, 416.920c. Under them, the persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant, which includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. *Id.* §§ 404.1520c(c), 416.920c(c).

The Regulations instruct that the factors of supportability and consistency "are the most important factors." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ is therefore required to explain how she considered the supportability and consistency of a medical source's opinion, and

14

"may, but [is] not required to, explain how [she] considered the [remaining factors], as appropriate." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

The supportability factor considers whether the medical source's opinions are supported by "objective medical evidence" and "supporting explanations." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The supportability analysis looks at whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations. *Crystal R. E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (observing that supportability is "something internal to the medical source" because section 1520c(c)(1) examines "objective medical evidence and supporting explanations <u>presented by</u>" the medical source "to <u>support</u> his or her medical opinion(s)" (emphasis in original) (quotation omitted)). Conversely, the consistency factor requires a comparison between the medical source opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

The Regulations do not "prescribe the depth at which the ALJ must discuss" the factors of supportability and consistency. *Harp v. Kijakazi*, No. 1:21-cv-00275-KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). But at minimum, the ALJ must "provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors

of consistency and supportability for each medical source's opinions." *Zambrano v. Kijakazi*, No. 1:20-cv-01356-KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022).

### A. Dr. Biles

Dr. Biles opined that while Plaintiff suffers from continuous kidney stones, the condition only requires medical intervention twice per year, and he did not recommend any limitations related to this impairment. [Doc 9-2 at 53–56]. Plaintiff argues that the ALJ's evaluation of Dr. Biles's opinion resulted in two errors. [Doc. 11 at 54–55]. First, Plaintiff contends that the ALJ erred as a matter of law during his attorney's cross-examination of Dr. Biles on this point. [*Id.*]. Specifically, the ALJ reminded the attorney that "the doctor has to base his opinion on what's in the file, not what the claimant says because by law we can't take the claimant's statements alone as the proof of disability." [Doc. 9-2 at 56–57]. However, Plaintiff does not explain how the ALJ's comment during cross-examination affected her evaluation of Dr. Biles's opinion. *See* [Doc. 11 at 53–54]. Even if the comment did affect the ALJ, the relevant regulations state that a claimant's statements about symptoms alone cannot establish disability. 20 C.F.R. §§ 404.1529(a)–(b), 416.929(a)–(b). Therefore, the ALJ did not err as a matter of law during Plaintiff's cross-examination.

Second, Plaintiff argues that the ALJ erred in finding Dr. Biles's opinion regarding Plaintiff's headache management consistent with the evidence. [Doc. 11 at 55]. Dr. Biles did not recommend limitations for the migraines because he noted that Plaintiff's symptoms improved with medication. [Doc. 9-2 at 58]. This opinion was formed after Dr. Biles reviewed the entire medical record. [*Id.* at 46]. The ALJ found that Dr. Biles's opinion was "consistent with the evidence of record as a whole." [*Id.* at 24]. The ALJ discussed evidence in the record which supported her finding. [*Id.* at 23]. For instance, the ALJ discussed the following medical source

evidence which indicated that Plaintiff's migraine headaches improved with treatment and did not require further limitations: (1) Sumitriptan helped the Plaintiff's headache symptoms immediately in early 2020; (2) the results of two neurological exams in 2020 were benign; (3) records indicated that physical therapy alleviated Plaintiff's symptoms; (4) Imitrex was helpful for Plaintiff's symptoms beginning in October 2020; and (5) headache symptoms improved by 2021. [*Id.*]. The ALJ sufficiently discussed medical source evidence that supported a finding of consistency with respect to Dr. Biles. Thus, the finding is supported by substantial evidence.

### B. Drs. Mars, Snyder, and Thommen

Plaintiff contends that the ALJ erred by finding the medical opinions of Drs. Mars, Snyder, and Thommen partially persuasive because the opinions were issued before a "significant uptick" in Plaintiff's medical interventions. [Doc. 11 at 55–56]. Even so, the ALJ deemed these opinions "partially persuasive" because Dr. Biles was able to "review more of the medical record" and included greater limitations based on his review. [Doc. 9-2 at 24]. Hence, the ALJ recognized and accounted for the limitations of these prior medical opinions. Next, Plaintiff argues that these opinions fail to discuss whether he requires work absences or unscheduled breaks. [Doc. 11 at 56]. But the fact that these doctors did not include such limitations in their opinions suggests that they did not believe such limitations were necessary.

Plaintiff additionally challenges the ALJ's evaluation of the supportability and consistency factors for these medical opinions. *See* [Doc. 16 at 11–12]. However, Plaintiff raises this argument for the first time in his reply brief. [*Id.*]. Arguments raised for the first time in a reply brief are deemed waived. *United States v. Leffler*, 942 F.3d 1192, 1197–98 (10th Cir. 2019). Consequently, Plaintiff has waived his argument about the consistency and supportability factors with respect to these opinions.

### C. Dr. Kick

Dr. Kick opined that Plaintiff would require more than three unscheduled breaks per workday and would likely miss two days of work each month due to his kidney stones. [Doc. 9-2 at 25]. The ALJ found this opinion unpersuasive because it was inconsistent with the medical record. [*Id.*]. Once more, Plaintiff does not challenge the ALJ's evaluation of the consistency factor. Instead, Plaintiff argues that the ALJ misunderstood the impact of Plaintiff's kidney stones on his ability to work. [Doc. 11 at 56]. But the ALJ deemed the limitations put forth by Dr. Kick to be appropriate only when Plaintiff was actively struggling with kidney stones, which the objective evidence showed occurred twice per year. [Doc. 9-2 at 25]. The ALJ noted that such objective evidence was consistent with Dr. Biles's testimony at the hearing. [*Id.*].

### D. Mr. Valderrama

Mr. Valderrama adopted the conclusion of examining occupational therapist Bruce Myers ("Mr. Myers") that Plaintiff was limited to sedentary work and also opined that Plaintiff's symptoms would interfere with his attention and concentration, that Plaintiff would need unscheduled breaks more than three times per day, and that Plaintiff would be absent more than three days per month. [Doc. 9-2 at 25]. The ALJ deemed this opinion inconsistent with the record and found it unpersuasive. [*Id.*].

Plaintiff challenges the ALJ's consistency finding. [Doc. 11 at 57–58]. The ALJ found that Mr. Myers's findings, and Mr. Valderrama's adoption of them, regarding Plaintiff's reduced strength, restricted range of motion in the lumbar spine, and poor activity tolerance were "all findings that are not consistent with the other medical evidence in the record." [Doc. 9-2 at 25]. To illustrate the inconsistency of the opinion, the ALJ explained that imaging of the lumbar spine was mild. *See* [*id.*]. Moreover, the ALJ determined that objective medical evidence, such as

18

Plaintiff's examinations, more frequently showed "benign findings as to the claimant's gait, strength, sensation, and reflexes." [*Id.*]. Consequently, the ALJ stated that the "overwhelming majority of the evidence [was] not consistent" with Mr. Valderrama's opinion. The ALJ's finding is based on substantial evidence.

## IV. New Evidence Presented to Appeals Council

Finally, Plaintiff argues that he submitted new and material evidence to the Appeals Council that related back to the period before the ALJ's decision and contradicted her findings. [Doc. 11 at 58].

Pursuant to the Regulations, if a claimant submits additional evidence to the Appeals Council after the ALJ's decision, they must establish that (1) the evidence is new and material, and relates to the period on or before the date of the hearing decision; (2) there is a reasonable probability that the additional evidence would change the outcome of the decision; and (3) there is good cause for not submitting the evidence earlier. 20 C.F.R. §§ 404.970(a)–(b), 416.1470(a)–(b). Whether evidence is new or material is a question of law subject to de novo review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

Plaintiff submitted a letter written by Dr. Kick in April 2022 to the Appeals Council. [Doc. 9-2 at 8]. The letter stated that Plaintiff's kidney stones affected his ability to work even when they did not require direct medical intervention. [*Id.*]. Dr. Kick opined that Plaintiff would need to miss work and would require more frequent unscheduled breaks during a regular workday when passing a kidney stone. [*Id.*]. The Appeals Council did not find a reasonable probability that the evidence would change the outcome of the ALJ's decision and denied review. [*Id.* at 2].

In considering the entire record, including the April 2022 letter, the Appeals Council's decision is supported by substantial evidence. As noted above, the ALJ found that Dr. Kick's

19

September 2021 opinion was unpersuasive. [*Id.* at 25]. In that opinion, Dr. Kick concluded that Plaintiff would need more than three unscheduled breaks while working and would miss two days of work each month due to kidney stones. [*Id.*]. The April 2022 letter provides essentially the same opinion which the ALJ deemed unpersuasive. The ALJ found that the limitations that Dr. Kick endorsed were only appropriate when Plaintiff was actively struggling with kidney stones. [*Id.*]. However, the ALJ additionally found that Plaintiff only actively struggled with kidney stones around two times per year based on Dr. Biles's testimony. [*Id.*]. While the April 2022 letter did include more details about frequent doctor visits and a need for radiological imaging, [*id.* at 8], the ALJ already had such information before her in the form of objective medical evidence, *see* [*id.* at 23–25].

Consequently, substantial evidence supports the Appeals Council's decision that there was no reasonable probability the new evidence would change the outcome of the ALJ's decision. *See M.H. v. Kijakazi*, No. 21-cv-01797-CNS, 2023 WL 2401063, at *4 (D. Colo. Mar. 8, 2023) (holding that when new evidence is similar to an opinion found unpersuasive by the ALJ, the Appeals Council's decision that there is no reasonable probability it would change the outcome is supported by substantial evidence).

## CONCLUSION

For the reasons stated herein, the Court **AFFIRMS** the Commissioner's final decision.

DATED: December 1, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge